FILED at 4:19 P.M
Jan 31, 20 14

Courtroom Deputy/Scheduling Clerk
U.S. District Court
Middle District of Georgia

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **CRIMINAL NO. 1:13-CR-27 (WLS)** |
| v. | : | |
| | : | |
| COREY D. DANIELS | : | |
| | : | |

## PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned attorney, and **COREY D. DANIELS**, hereinafter referred to as "Defendant" or "DANIELS," and defendant's undersigned attorney, as follows:

### (1)

Defendant acknowledges that defendant has reviewed and discussed the indictment against defendant in this matter with defendant's attorney and defendant's attorney has explained to defendant his understanding of the government's evidence.

### (2)

Defendant understands that defendant is not required to plead guilty, and that defendant has the right to plead not guilty and to elect instead to be tried by jury. Defendant understands that at a jury trial, defendant would enjoy a presumption of innocence, and that the government would have the burden of proving defendant's guilt beyond a reasonable doubt. Defendant understands that defendant would be entitled

to the services of a lawyer at all stages of such a trial. Defendant understands that defendant would be entitled to confront and to cross-examine the government's proof, and to present witnesses and evidence in defendant's own behalf. Defendant understands that defendant would have the right to testify in defendant's own behalf, but that defendant could not be compelled to do so. Defendant has discussed these rights with defendant's attorney. Defendant is satisfied with the services of defendant's lawyer. Defendant knowingly and voluntarily waives defendant's right to plead not guilty and to proceed to trial.

The United States Attorney and Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny. So defendant agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

Defendant being fully cognizant of defendant's rights, and in exchange for the considerations to be made by the United States as set forth in paragraph (4) below, agrees pursuant to Rule 11(c), Federal Rules of Criminal Procedure, as follows:

2

(A)     Defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count 3 of the indictment which charges that defendant did combine, conspire, confederate, agree, and have a tacit understanding with the co-defendants and with others known and unknown to the grand jury, to knowingly and willfully operate or cause to be operated commercial motor vehicles when defendants were precluded from so operating under the provisions of imminent hazard Out-of-Service Orders issued by the FMCSA, in violation of the rules and regulations prescribed by the Department of transportation, as set forth in Title 49, Code of Federal Regulations, Section 386.72 and in violation of Title 49, United States Code, Section 521(b)(6)(A).

(B)     That defendant fully understands that defendant's plea of guilty as set forth in Subparagraph (A), above, will subject defendant to a statutory penalty of up to one year imprisonment, a maximum fine of $25,000.00, or both, and a term of supervised release of up to one (1) year. Defendant further acknowledges that the Court is required to impose a mandatory assessment of $25.00.

(C)     Defendant acknowledges and understands that the Court is not bound by any estimate of the advisory sentencing range that defendant may have received from defendant's counsel, the government, or the Probation Office.  Defendant further acknowledges and agrees that defendant will not be allowed to withdraw defendant's plea because defendant has received an estimated guideline range from the government, defendant's counsel, or the Probation Office which is different from the advisory guideline range computed by the Probation Office in the Presentence Report and found by the Court to be the correct advisory guideline range.

3

(D)     Defendant understands fully and has discussed with defendant's attorney that the Court will not be able to consider or determine an advisory guideline sentencing range until after a pre-sentence investigative report has been completed.  Defendant understands and has discussed with defendant's attorney that defendant will have the opportunity to review the pre-sentence investigative report and challenge any facts reported therein.  Defendant understands and has discussed with defendant's attorney that any objections or challenges by defendant or defendant's attorney to the Pre-Sentence Report, the Court's evaluation and rulings on that Report, or the Court's sentence, will not be grounds for withdrawal of the plea of guilty.

(E)     Defendant understands and has discussed with defendant's attorney that after the Court considers the advisory guideline range for this case, the Court will have the discretion to impose a sentence that is more severe or less severe than the advisory guideline range.

(F)     Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.

(G)     Defendant understands that ordinarily Title 18, United States Code, Section 3742, will in certain cases allow for a direct appeal after sentencing followed by the Court of Appeals' limited review of a defendant's sentence.  But once this agreement is accepted and sentence is imposed by the District Court, defendant by this agreement forever waives any right to an appeal or any other court review of defendant's sentence, and defendant's waiver includes any collateral attack on the District Court's sentence.  However, in the event that the District Court imposes a

4

sentence that exceeds the advisory guideline range as determined by the District Court, then the defendant shall retain the right to pursue a timely appeal of the sentence imposed, but not the determination of the guideline range by the District Court, directly to the Court of Appeals after the District Court imposes its sentence.

Defendant and the United States Attorney agree that nothing in this plea agreement shall affect the government's opportunity to appeal as set forth in Title 18, United States Code, Section 3742(b).  If, however, the United States Attorney notices an appeal of defendant's sentence, then the defendant shall have the right to cross-appeal from the sentence.

(H)     Defendant and the government stipulate and agree that there was no detected or identified biological evidence obtained during the investigation and prosecution of the matter which is subject to DNA testing.  Defendant further agrees that all evidence obtained in this investigation and prosecution may be destroyed or returned to its rightful owner.

(I)      Defendant agrees to provide complete, candid, and truthful statements to law enforcement officers regarding defendant's involvement and the involvement of all others involved in the charges alleged in the present indictment as well as any and all criminal violations about which defendant has knowledge or information and that such information provided will be pursuant to and covered by this agreement.  Defendant further agrees to provide complete, candid, and truthful testimony regarding such matters in any proceeding.  The defendant understands that this agreement does not require defendant to implicate any particular individual or individuals or to "make a

5

case," rather it requires defendant to be truthful and to testify truthfully whenever called upon.

(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:

(A)     That he will accept the plea of guilty by defendant, as provided in Paragraph (3)(A), above in full satisfaction of all possible federal criminal charges known to the United States Attorney at the time of defendant's guilty plea, which might have been brought solely in this district against defendant, will dismiss the remaining count of the indictment, and, unless defendant commits a new crime or information not now known to the government which would increase defendant's sentencing guideline range is discovered, will recommend that the court impose a sentence of probation.

(B)     That he further agrees, if the defendant cooperates truthfully and completely with the government, including being debriefed and providing truthful testimony, at any proceeding resulting from or related to defendant's cooperation, to make the extent of defendant's cooperation known to the sentencing court.  If defendant is not completely truthful and candid in defendant's cooperation with the Government, defendant may be subject to prosecution for perjury, false statements, obstruction of justice, and/or any other applicable charge.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Title 18, United States Code, Section 3553(e) and/or Section 5K1.1 of the advisory Sentencing Guidelines warranting a government

6

motion at the time of sentencing recommending a downward departure from the advisory guideline range.  If the cooperation is completed subsequent to sentencing, the Government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure warranting the filing of a motion for reduction of sentence within one year of the imposition of sentence.  In either case, defendant understands that the determination as to whether defendant has provided "substantial assistance" rests solely with the Government.  Any good faith efforts on the part of defendant that do not substantially assist in the investigation or prosecution of another person who has committed a crime will not result in either a motion for downward departure from the advisory guideline range or a Rule 35 motion.  In addition, should defendant fail to cooperate truthfully and completely with the Government, or if defendant engages in any additional criminal conduct, defendant shall not be entitled to consideration pursuant to this paragraph.

(C)     Pursuant to Section 1B1.8 of the United States Sentencing Guidelines, the Government agrees that any self-incriminating information which was previously unknown to the Government and is provided to the government by defendant in connection with defendant's cooperation and as a result of defendant's plea agreement to cooperate will not be used in determining the advisory guideline range.  Further, the government agrees not to bring additional charges against defendant, with the exception of charges resulting from or related to violent criminal activity, as defined in Title 18, United States Code, Section 924(e)(2)(B)(i), based on any information provided by defendant in connection with defendant's cooperation, which information was not

7

known to the government prior to said cooperation.  This does not restrict the government's use of information previously known or independently obtained for such purposes.

(D)     If defendant affirmatively manifests an acceptance of responsibility as contemplated by the Sentencing Guidelines and otherwise qualifies for such an adjustment, the United States Attorney will recommend to the Court that defendant receive a downward adjustment in the advisory guideline range.  But the decision whether defendant will receive any sentence reduction for acceptance of responsibility rests within the Court's discretion.  The United States expressly reserves its right to furnish to the Court information, if any, showing that defendant has not accepted responsibility, including, but not limited to, denying his involvement, giving conflicting statements as to his involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(5)

Nothing herein limits the sentencing discretion of the Court.

(6)

This agreement constitutes the entire agreement between defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case.  In addition, defendant states that no person has, directly or indirectly, threatened or coerced defendant to do or

refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(7)

As an aid to this Court, the United States Attorney and defendant, by and through defendant's counsel, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Pre-Sentence Report determine the facts relevant to sentencing.

Subject to the above paragraph, the United States Attorney and the defendant stipulate and agree that the following facts are true and would be proven beyond a reasonable doubt at a trial:

DEFENDANT DANIELS admits that the allegations contained in Count 3 of the indictment are true and correct.

Co-defendant Devasko Lewis and his prior company, Lewis Trucking, were the subject of an Imminent Hazard Operations Out-of-Service (IMH OOS) Order from the United States Department of Transportation (DOT), Federal Motor Carrier Safety Administration (FMCSA), served on Lewis on October 6, 2008. The IMH OOS order followed an unsatisfactory safety compliance review conducted on October 3, 2008 following a fatal traffic accident in Alabama involving one of Lewis' drivers. The OOS specifically excludes the company and Devasko Lewis by name from operation of a commercial motor vehicle (CMV) in intra or interstate commerce.

9



In 2011, a roadside stop by Georgia Department of Public Safety (DPS) officers showed that trucks owned and operated by Devasko Lewis had significant enough violations to warrant placing his vehicle out of service.  Another compliance inspection of Devasko Lewis's trucking business resulted, and on September 29, 2011, a subsequent IMH OOS order was issued against DDL Transport, Lewis's new company, and its officers, directors, managers, as well as certain specified vehicles listed in the OOS order, which are registered to Lewis.  That order cited 129 violations found on DDL operated equipment during 5 separate roadside stops.  DANIELS was aware that Devasko Lewis was precluded by OOS orders from operating or being involved in a trucking business.

In November of 2011, Devasko Lewis was indicted and charged with, among other violations, 6 counts of continuing operation after the imposition of the OOS Orders in violation of 49 USC § 521.  On May 16, 2012, Devasko Lewis pled guilty to three of the counts under of violating the OOS Orders. Devasko Lewis was sentenced to 90 days imprisonment and 1 year term of supervised release on September 10, 2012.  A condition of his TSR includes that he not participate in the trucking industry as owner or operator in any way unless he is in compliance with all applicable laws.  Devasko Lewis reported to prison in late November 2012.

However, investigation by DOT into Devasko Lewis's activities after he pled guilty and around the time of sentencing began to reveal that he was still involved in trucking, in violation at that time of the provisions of his sentence and in violation of the OOS orders. On March 5, 2012, before he entered his first plea in this Court, Devasko Lewis

filed an application for a US DOT Motor Carrier Number for a motor carrier named "Eagle Transport" in the name of Matoshia Grant. When he registered for it, Devasko Lewis told Grant that needed to use her name because he was "reorganizing" his business in order to get her permission, but he did not tell her he was under two separate OOS Orders barring him from operating a motor carrier. He filed the application, Form MCS-150, identifying Ms. Grant as the "Manager" of the Eagle Transport but did not identify himself in the application as having any involvement. Ms. Grant allowed Lewis to use her name for the DOT number application, but she did not have anything to do with operating the company and knew nothing about trucking whatsoever. The application identifying her as the manager of the company and failing to identify Lewis was false and was for the purpose of misleading FMCSA because Lewis was not to be involved in operating a commercial motor carrier.

On March 14, 2012, DANIELS, who was operating a trucking business along with Devasko Lewis, completed and filed an application for a US DOT Motor Carrier Number for a motor carrier named "Eagle Trans" in his name. DANIELS indicated that he was the owner and did not refer to Devasko Lewis as a partner or officer of the company. However, DANIELS was aware that Devasko Lewis was operating the company, along with DANIELS. The purpose again for not identifying Devasko Lewis on the application was to mislead FMSCA about Devasko Lewis's involvement in the trucking operation.

Between April 4, 2012, and January 23, 2013, trucks operating under Eagle Transport or Eagle Trans were stopped for roadside inspections on nine occasions leading to a total of 88 violations and 6 "spot" OOS orders by Georgia DPS for the

trucks or drivers.  Devasko Lewis and DANIELS used the same CMVs when operating as both "companies" and operated as both Eagle Transport and Eagle Trans without distinction. One of the Eagle Trans stops revealed that the company was hauling for Bethel Farms in Arcadia, FL.  Follow up with Bethel revealed that the contact number for Eagle Trans was a phone number used by Devasko Lewis.  Bethel and later Screven Gin Co. had the name DeWayne as the contact name associated with that contact number, which was Devasko Lewis using his middle name. From the period of May 2, 2012, to July 17, 2012, Eagle Transport/Trans hauled 31 loads for Bethel Farms. Devasko Lewis signed in as the driver 6 times, including signing in as the driver for 3 loads on May 17, 2012, the day following entry of his guilty plea. DANIELS also signed as a driver. Devasko Lewis, with DANIELS knowledge and approval, cashed at least 6 of the cash advances paid by ComData payments to Eagle which were cashed by Devasko Lewis in his own name and would have required using his own identification.

On October 10, 2012, DANIELS was stopped while driving a truck with an Eagle Trans US DOT number. When asked about his logbook by the DPS officer, DANIELS told the officer "DeWayne," meaning Devasko Lewis, keeps the time records" and supplied Devasko Lewis's number. The cellphone that DANIELS had been talking on at the time of the stop showed on the screen "VASKO," again referring to Devasko Lewis who DANIELS had been talking with. DANIELS had just left the residence of Devasko Lewis and reported that he was returning there as well. DANIELS and Devasko Lewis used the residence as the location for the operation of the commercial motor carrier business.



In November of 2012, Eagle Transport/Trans did a significant amount of hauling of cottonseed for Screven Gin Co through Chickasha of Georgia, Inc. The contact person for Eagle again was "DeWayne" meaning Devasko Lewis and the number was Lewis's cell number. Toward the end of November, because Devasko Lewis was to report to prison, Screven was given new contacts for Eagle, co-defendant Calvin Outlaw and DANIELS. The invoices for the hauling showed that "Dewayne Lewis" (Devasko) hauled at least 2 loads in November. Co-defendant Outlaw was aware that he was driving for Devasko Lewis since he was driving one of Lewis's trucks, even though the pretense was that he was driving for DANIELS. Outlaw had been served with the DDL OOS Order in October 2011 and notified that the Order applied to him unless and until rescinded. In February 2012 Outlaw was stopped while driving one of the trucks listed in the DDL OOS Order which was the property of Devasko Lewis.

After Lewis reported to BOP on or around November 29, 2012, he repeatedly contacted his half-brother Lacey Lewis and gave instructions on about running the trucking business. These conversations related to dispatching drivers, maintaining trucks, changing the insurance policy, and hiring drivers. Lacey Lewis was responsible for invoicing, paying drivers and making deposits. DANIELS was aware that Lacey Lewis was assisting with the business at the direction of Devasko Lewis.

While Devasko Lewis was in prison, DANIELS gave payment checks for the company to Lacey Lewis who would deposit them in Devasko Lewis's personal bank account. From that account, Lacey Lewis would pay a portion of the money to DANIELS from the Lewis personal account. Financial records from Lewis' bank confirm



that Lacey Lewis was added to the bank account for signature only on November 27, 2012, just before Devasko Lewis reported to BOP, and that DANIELS was not involved with the account.

Devasko Lewis applied for insurance coverage for the trucks that DANIELS and Devasko Lewis were operating in February 2012 under Lewis Trucking, Devasko Lewis was listed as involved in the daily operation of the business, and Devasko Lewis was listed as the only person who can make changes to the policy.   DANIELS never applied for or obtained any insurance for the trucks or the business.  All of the specific trucks listed in the DDL OOS Order have been, at times, insured on that policy.  A change was once made to the policy after Devasko Lewis called DANIELS and directed DANIELS get Lacey to call and pretend to be Devasko Lewis and drop coverage on a truck.

The parties stipulate that DANIELS knowingly agreed with others, including the co-defendants, to operate and cause to be operated CMVs, for profit, when the operations were precluded under the provisions of the OOS orders issued by MCSA. The commercial motor carrier operations were controlled by and involved Devasko Lewis and utilized certain commercial motor vehicles which were out of service all in violation of the order.  The manner of registration and certain aspects of the operation of the commercial motor carriers were done by DANIELS and Devasko Lewis to hide the fact that Devasko Lewis actually controlled and operated them and avoid detection by FMSCA.

The parties also stipulate and agree that the conditions of any sentence imposed by the Court will include a provision that DANIELS sever all commercial motor carrier

business ties with Devasko Lewis or any business associated with Devasko Lewis and that, during the time of any such sentencing provisions, DANIELS will be subject to compliance reviews at any time by FMSCA and will comply with the requirements of such compliance reviews.

15



(8)

## ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with defendant's attorney that

this agreement shall become effective only upon the Court's acceptance of this

agreement and the Court's acceptance of the plea of guilty by the defendant.

SO AGREED, this _____ day of _____, 2014


MICHAEL J. MOORE
UNITED STATES ATTORNEY


BY: _____
ROBERT D. McCULLERS
GEORGIA BAR NO. 486976
ASSISTANT UNITED STATES ATTORNEY
MIDDLE DISTRICT OF GEORGIA
P.O. BOX 1702
MACON, GA 31202
TEL. (478) 621-2700
FAX. (478) 621-2655

I, COREY D. DANIELS, have read this agreement or had this agreement read to me by my attorney, JOHN R. LEDFORD, I have discussed this agreement with my attorney and I fully understand it and agree to its terms.

COREY D. DANIELS
DEFENDANT

I, JOHN R. LEDFORD, attorney for defendant, COREY D. DANIELS, have explained the indictment and the government's evidence received through discovery and my investigation of the charge to defendant.  I believe defendant understands the charge against defendant and the evidence that would be presented against defendant at a trial.  I have read this agreement, have been given a copy of it for my file, and have explained it to defendant.  To the best of my knowledge and belief, defendant understands this agreement.

JOHN R. LEDFORD
ATTORNEY FOR DEFENDANT

17